Anthony LOMBARDO, Appellant,

v.

INVESTMENT MANAGEMENT AND
RESEARCH INCORPORATED,
Appellee.

No. 93–CA–0613–S.

Court of Appeals of Kentucky.

Sept. 9, 1994.

Don C. Meade, Louisville, for appellant.

Edward K. Black, Louisville, for appellee.

Before COMBS, DYCHE and GARDNER, JJ.

COMBS, Judge:

Appellant appeals the dismissal by the Jefferson Circuit Court of his application to vacate an arbitration award given in his absence. Appellant alleges the circuit court erred in not vacating the arbitration award since he was not properly notified of the time and place of the arbitration. We disagree and affirm.

Appellant, Anthony Lombardo ("Lombardo"), is a former employee of the Appellee,

Investment Management & Research, Inc. ("IMR"). While employed by IMR, Lombardo was granted an option to purchase certain stock in Raymond James Financial, Inc. ("RJF"), of which IMR is a subsidiary. Lombardo exercised this option, and 1210 shares of RJF were transferred to his account. The stock price was $12,718.83. This amount should have been deducted from Lombardo's account, but due to a clerical error, when Lombardo sold the stock the same day for $19,559.46, no offset had been made for the difference. Lombardo then requested a payout on his account, and $19,559.46 was wired to his First National Bank Account. When IMR discovered the error, the account was left with a debit of $12,718.83. IMR credited the amount from Lombardo's money-market account to the debit, which left a new debit amount of $12,607.11. Although IMR notified Lombardo of the deficiency, the amount was never paid.

On October 29, 1980, Lombardo opened a securities brokerage account with IMR, at which time he signed an option agreement and suitability form which stated that all disputes between Lombardo and IMR would be settled by arbitration. Pursuant to the agreement between the parties, IMR submitted the matter to the National Association of Securities Dealers ("NASD") for arbitration. IMR filed its statement of claim on August 2, 1991, and on October 8, 1991, Lombardo filed his statement of answer, in compliance with the NASD code. On October 31, 1991, NASD informed Lombardo by mail that a hearing in the matter would be held in Louisville, Kentucky, on March 9, 1992. The letter also informed Lombardo that all other pertinent information regarding the hearing, including the exact time and location of the hearing and the name and affiliations of the arbitrator, would be forwarded at a later date. On December 16, 1991, Lombardo sent a letter to NASD requesting that his counter-claim be accepted and that the filing fee be waived. On December 24, 1991, NASD sent a letter to Lombardo informing him of the NASD staff member assigned to the dispute and advising him that all future correspondence be forwarded to Shari L. Sturm ("Sturm").

On January 27, 1992, IMR sent, via certified mail, the notice required under the NASD code of the exact time and location of the hearing and the name of the arbitrator. The letter was returned to NASD unclaimed on March 3, 1992. Lombardo called Sturm's office on March 6, 1992, and was informed orally of the hearing, of which he had originally received written notice on October 31, 1991. Presumably referencing to the unclaimed notice sent January 27, 1992, he told Sturm's secretary that he had not received any notice and requested a postponement. Sturm's secretary informed Lombardo that a request for a continuance must be in writing. Nonetheless, Lombardo never submitted a written postponement request.

On March 9, 1992, the date of the hearing, Lombardo called the Kentucky Bar Association (the hearing location), and left a message for the arbitrator informing him that he would not be attending. The arbitrator held the hearing in his absence, awarding IMR the $12,607.11 deficiency. The arbitrator's award was entered on March 30, 1992, and sent to Lombardo via regular mail on May 13, 1992.

Lombardo filed an application in the Jefferson Circuit Court to vacate the arbitration award. In response, IMR filed a motion for summary judgment, which was granted by the Court on February 11, 1993. Lombardo then filed his appeal with this Court.

Lombardo's first contention is that he was not properly notified of the hearing, and, as a result, that he was justified in not appearing. Section 26 of the NASD Code states:

> Notice of the time and place for the initial hearing shall be given at least eight (8) business days prior to the date fixed for the hearing by personal service, registered or certified mail to both of the parties unless the parties shall, by their mutual consent, waive the notice.

NASD sent the required notice via certified mail on January 27, 1992. The letter was returned, unclaimed, to NASD on March 3, 1992. The circuit judge found that this failed delivery occurred "not due to any inaction or deficiency on the part of [IMR] or NASD, but rather because of [Lombardo's] failure to claim it."

■ Unless otherwise agreed, or obviated by statute, parties to an arbitration are entitled to reasonable notice of the time and place of hearings. 5 Am.Jur.2d *Arbitration and Award* § 114 (1962). However, lack of formal notice does not invalidate an award if the parties to the arbitration have *actual knowledge* of the hearing in advance. *Id. Second Society of Universalists v. Royal Ins. Co.,* 221 Mass. 518, 109 N.E. 384 (1915). The essential requirement is that the party be afforded a reasonable opportunity to be heard. *Battle v. General Cellulose Co., Inc.,* 23 N.J. 538, 129 A.2d 865 (1957). It is undisputed that Lombardo was aware of the date of the arbitration hearing four months prior to the hearing date. It is also undisputed that he knew that the exact time and location of the hearing would be forwarded to him— either by personal service or via *certified mail.* Additionally, even if we were to believe that failure to receive the written notice was not a subterfuge or an attempt to circumvent the arbitration procedure, Lombardo received actual notice as described by *Second Society,* 109 N.E. at 384, and declined to take any action pursuant to that notice; *i.e.,* either to appear or to file a written request for postponement.

■ Unlike the formal requirements of service of process in a lawsuit, the jurisdiction of the decision-maker is not in question. Nor can Lombardo claim any inability to prepare for lack of proper notice. He simply did not pick up the certified letter—which he knew to expect—and therefore was not aware of the location and time of the hearing. As Lombardo had actual notice, no purpose would be served in vacating the award to perfect a technically correct notice. Lombardo voluntarily contracted and elected to submit to arbitration, pursuant to his agreement with IMR, according to his unqualified acceptance of the NASD guidelines; "[t]he decision to submit a dispute to arbitration is left solely to the agreement of the parties to the contract, and they are bound by its provisions." *Bernstein Seawell & Kove v. Bosarge,* 813 F.2d 726 (5th Cir.1987). By agreeing to arbitrate, he waived any jurisdictional defenses. Contrary to Lombardo's assertion that due process requires strict compliance with the statutory notice require-

ments, the provisions of the NASD guidelines supersede these requirements by contract of the parties. He cannot argue that he was improperly "served" when he has already consented to the "Notice of Time and Place of Hearing" provision of the NASD guideline providing that notice be "given" rather than "served." This distinction in terminology anticipates that actual notice may occur and will suffice—separate and apart from formal service of process in judicial litigation.

■ The settlement of disputes by arbitration is favored in the law of this Commonwealth. *Valley Const. v. Perry Host Management,* Ky.App., 796 S.W.2d 365 (1990); *cf. Carrs Fork Corp. v. Kodak Min. Co.,* Ky., 809 S.W.2d 699 (1991). Generally, much judicial latitude and deference are accorded to an arbitration decision. It will not be disturbed by the courts "merely because it was unjust, inadequate, excessive or contrary to law." *Carrs Fork Corp.,* 809 S.W.2d at 702. Although there are cases where equity demands intervention by the courts, this Court has consistently held that an arbitration award is to be considered the end of the controversy—not the beginning. *Id.* The issue of whether notice was effected is a procedural matter which is relegated to the arbitrator. *Cf. The Beyt, Rish, Robbins Group v. Appalachian Regional Healthcare, Inc.,* Ky.App., 854 S.W.2d 784, 786 (1993); *Bastone v. Dial–A–House, inc.,* 100 Misc.2d 1026, 420 N.Y.S.2d 467 (N.Y.Sup.Ct.1979); *see also John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The arbitrator decided to proceed in Lombardo's absence for the following sound reasons: (1) Lombardo had actual notice of the hearing; and (2) he called to request a continuance and yet never complied with the requirement to submit a written request. Neither equity nor public policy demands that we intervene in this case.

Lombardo next contends that the circuit court erred in granting IMR's motion for summary judgment. Relying on *Steelvest v. Scansteel,* Ky., 807 S.W.2d 476 (1991), he argues that the Judge failed to interpret the facts in a light most favorable to him. Al-

though Lombardo correctly notes the prevailing authority, he misapplies its directives. The trial judge correctly found, as a matter of law, that Lombardo had received adequate notice based on the uncontroverted facts presented.

The decision of the Jefferson Circuit Court granting IMR's motion for summary judgment is, therefore, affirmed.

All concur.