In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-02-00347-CV

____________


KEBRET I. MOHAMED, Appellant


V.


AUTO NATION USA CORP.; AUTO NATION, USA; AUTO NATION,
INC.; AUTO NATION, INC. F/K/A MERCEDES BENZ OF
HOUSTON-GREENWAY; HOUSTON AUTO IMPORTS GREENWAY,
LTD. D/B/A MERCEDES BENZ OF HOUSTON-GREENWAY, Appellees (1)






On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 2001-60221

 




* * *


____________


NO. 01-02-00519 -CV

____________


IN RE KEBRET I. MOHAMED






Original Proceeding on Petition for Writ of Mandamus

 




O P I N I O N


 By interlocutory appeal and mandamus, appellant/relator, Kebret I. Mohamed,
challenges an order granting the motion to compel arbitration and abate proceedings
of appellees/real parties in interest, Auto Nation USA Corp., Auto Nation, USA, Auto
Nation, Inc., Auto Nation, Inc. f/k/a Mercedes Benz of Houston-Greenway, and
Houston Auto Imports Greenway, Ltd. d/b/a Mercedes Benz of Houston-Greenway
(collectively, "the Auto Nation parties"). We determine (1) whether we have
jurisdiction over the mandamus proceeding or the interlocutory appeal and (2)
whether the trial court abused its discretion in implicitly ruling that the non-signatory
Auto Nation parties could enforce the arbitration agreement. We dismiss the
interlocutory appeal for want of jurisdiction and conditionally grant the petition for
writ of mandamus.


Background


 In May 1999, Park Place-South hired Mohamed, a United States citizen born
and raised in Ethiopia, as a valet for its car-sales business. Mohamed alleges that,
shortly after he was hired, his co-workers began severely harassing him because of
his race and national origin. Mohamed alleges the harassment continued until he was
constructively discharged.

 Mohamed signed an alternative dispute resolution agreement ("the arbitration
agreement") with Park Place-South in June 1999. (2) It appears that, some time before
Mohamed quit, but after he signed the arbitration agreement, one of the Auto Nation
parties purchased Park Place-South. In November 2001, Mohamed sued the Auto
Nation parties and two of his supervisors for race discrimination; intentional
infliction of emotional distress; and negligent hiring, supervision, and retention. In
January 2002, the Auto Nation parties moved to compel arbitration and to dismiss or
stay trial-court proceedings. Mohamed contested the agreement's validity and
enforceability. (3) Both parties submitted summary evidence along with their arbitration
pleadings. After a non-evidentiary hearing, the trial court granted the motion to
compel arbitration and abated the cause.

Interlocutory Appeal (4)


 Mohamed indicates in his brief that he filed both an interlocutory appeal and
a mandamus proceeding because the trial court's order did not state whether it was
rendered under the Texas General Arbitration Act ("TAA") (5) or the Federal
Arbitration Act ("FAA"). (6) Mohamed originally argued, however, that jurisdiction lay
over the interlocutory appeal because the order compelling arbitration could have
been rendered only under the TAA, which he claims authorizes this appeal. The Auto
Nation parties moved to dismiss the appeal and for sanctions, arguing no jurisdiction
lay over an appeal from an order compelling arbitration under the TAA. During oral
argument, Mohamed conceded that his only remedy is mandamus.


 We agree with the parties that no interlocutory appeal lies from an order
granting a motion to compel arbitration under the TAA. (7) See Tex. Civ. Prac. &
Rem. Code Ann. § 171.098(a)(1), (2) (Vernon Supp. 2002) (allowing interlocutory
appeal of orders, among others, that deny application to compel arbitration or that
grant application to stay arbitration); Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a) (Vernon Supp. 2002) (omitting orders granting application to compel
arbitration among orders appealable interlocutorily); Glazer's Wholesale Distribs.,
Inc. v. Heineken USA, Inc., No. 05-99-01685-CV, slip op. at 8 (Tex. App.--Dallas
June 29, 2001, pet. granted) (consolidated orig. proceeding & interlocutory appeal;
designated for publication); In re Godt, 28 S.W.3d 732, 738 (Tex. App.--Corpus
Christi 2000, orig. proceeding); Materials Evolution Dev. USA, Inc. v. Jablonowski,
949 S.W.2d 31, 33 (Tex. App.--San Antonio 1997, no writ); Lipshy Motorcars, Inc.
v. Sovereign Assocs., Inc., 944 S.W.2d 68, 69-70 (Tex. App.--Dallas 1997, no writ);
Elm Creek Villas Homeowner Ass'n, Inc. v. Beldon Roofing & Remodeling Co., 940
S.W.2d 150, 153-54 (Tex. App.--San Antonio 1996, no writ); Gathe v. Cigna
Healthplan of Texas, Inc., 879 S.W.2d 360, 362 (Tex. App.--Houston [14th Dist.]
1994, writ denied).

 Only mandamus lies over an order granting a motion to compel arbitration
under the TAA. See Glazer's Wholesale Distribs., No. 05-99-01685-CV, slip op. at
8-9 (considering mandamus proceeding over same because party compelled to
arbitrate without allegedly having agreed to do so had no adequate remedy by
appeal); In re Godt, 28 S.W.3d at 738 (same); cf. Freis v. Canales, 877 S.W.2d 283,
284 (Tex. 1994) (in considering whether mandamus lay from order compelling
arbitration under FAA, stating, "[A] party who is compelled to arbitrate without
having agreed to do so will have lost its right to have the dispute resolved by
litigation. Accordingly, such a party has no adequate remedy by appeal."). 
Therefore, we need not reach that part of Mohamed's issue one concerning whether
the TAA or the FAA controls: whichever act applies, mandamus lies, not an appeal. 
See In re Am. Homestar, Inc., 50 S.W.3d 480, 483 (Tex. 2001) (mandamus lay over
order compelling arbitration under FAA); Jack B. Anglin Co. v. Tipps, 842 S.W.2d
266, 272-73 (Tex. 1992) (mandamus lay over order denying arbitration under FAA);
Glazer's Wholesale Distribs., No. 05-99-01685-CV, slip op. at 8-9 (dismissing appeal
from order compelling arbitration under TAA, but considering mandamus proceeding
over same). 

 Accordingly, we grant the Auto Nation parties' motion to dismiss Mohamed's
interlocutory appeal. However, we deny their request for frivolous-appeal sanctions
against Mohamed because (1) although their own arbitration motion argued the FAA
applied, that motion alternatively argued the arbitration agreement was enforceable
under the TAA; (2) the trial court's order did not specify which act applied; and (3)
as discussed in footnote seven above, the Texas Supreme Court's opinion in Jack B.
Anglin Co. v. Tipps (8) contained dictum suggesting that an appeal might lie. See Trico
Marine Servs., Inc. v. Stewart & Stevenson Technical Servs., 73 S.W.3d 545, 548
(Tex. App.--Houston [1st Dist.] 2002, no pet.) (combined appeal & orig. proceeding)
(denying motion for sanctions, accompanying motion to dismiss appeal of order
compelling arbitration under TAA, for similar reasons).

Mandamus (9)


A. Standard of Review and Law of Arbitration

 We review the trial court's order for abuse of discretion. Anglin, 842 S.W.2d
at 271; Trico Marine Servs., 73 S.W.3d at 548. A trial court abuses its discretion
when it errs in determining what the law is or in applying the law to the facts. In re
Bruce Terminix Co., 988 S.W.2d 702, 703 (Tex. 1998); Trico Marine Servs., 73
S.W.3d at 548.

 "'A party cannot be required to arbitrate unless it has agreed to do so.'" Trico
Marine Servs., 73 S.W.3d at 548 (quoting Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202,
205 (Tex. App.--Houston [1st Dist.] 1997, orig. proceeding)); see also Tex. Civ.
Prac. & Rem. Code Ann. § 171.021(a) (Vernon Supp. 2002) (requiring judge to
order arbitration upon finding agreement to arbitrate). "The parties' agreement to
arbitrate must be clear. In this determination, Texas contract law applies." Trico
Marine Servs., 73 S.W.3d at 548 (citations omitted). "Construction of an
unambiguous contract is a question of law." Id. (citing MCI Telecommunications
Corp. v. Texas Utilities Elec. Co., 995 S.W.2d 647, 650 (Tex. 1999)). 

 A party seeking to compel arbitration has the initial burden to establish the
arbitration agreement's existence and show that the claims asserted fall within the
agreement's scope. In re Kellogg Brown & Root, 80 S.W.3d 611, 615 (Tex.
App.--Houston [1st Dist.] 2002, orig. proceeding); see Tex. Civ. Prac. & Rem.
Code Ann. § 171.021(a) (Vernon Supp. 2002). Whether an enforceable agreement
to arbitrate exists is a legal question entitled to de novo review. In re Kellogg Brown
& Root, 80 S.W.3d at 615. If the party seeking arbitration carries its initial burden,
the burden then shifts to the party resisting arbitration to present evidence on its
defenses to the arbitration agreement. See In re Oakwood Mobile Homes, Inc., 987
S.W.2d 571, 573 (Tex. 1999); see also Tex. Civ. Prac. & Rem. Code Ann. §
171.021(b) (Vernon Supp. 2002).

B. Non-Signatories' Right to Enforce the Arbitration Agreement (10)

 Under issue one, Mohamed argues the Auto Nation parties could not enforce
the arbitration agreement because they were not signatories to the agreement and did
not prove they were in privity with a signatory. (11)

 The initial burden of the party seeking to compel arbitration--to establish the
arbitration agreement's existence--includes proving the entity seeking to enforce the
arbitration agreement was a party to it or had the right to enforce the agreement
notwithstanding. See Pepe Int'l Dev. Co. v. Pub Brewing Co., 915 S.W.2d 925, 931
(Tex. App.--Houston [1st Dist.] 1996, no writ) (combined appeal & orig.
proceeding); Texas Private Employment Ass'n v. Lyn-Jay Int'l, Inc., 888 S.W.2d 529,
531, 532 (Tex. App.--Houston [1st Dist.] 1994, no writ) (op. & op. on reh'g)
(holding association itself was not party to arbitration agreement, set out in
association's by-laws, that required association's members to arbitration disputes
among themselves). The burden of showing one's status as a party or one's right to
enforce, as with the overall burden of establishing the arbitration agreement's
existence, is generally evidentiary. See In re Oakwood Mobile Homes, 987 S.W.2d
at 573 ("A party seeking to compel arbitration must establish the existence of an
arbitration agreement . . . Here, Oakwood met its burden of presenting evidence of an
arbitration agreement that governs the dispute between the parties.") (emphasis
added; citations omitted); Anglin, 842 S.W.2d at 269 ("[T]he trial court may
summarily decide whether to compel arbitration on the basis of affidavits, pleadings,
discovery, and stipulations."); In re Koch Indus., Inc., 49 S.W.3d 439, 444 (Tex.
App.--San Antonio 2001, orig. proceeding) ("The party seeking arbitration has the
initial burden to present evidence of an arbitration agreement.") (emphasis added). 
An entity's burden to prove it is a signatory exists because arbitration is a creature of
contract: when an entity seeks to compel arbitration, it must first establish its right to
that contract remedy. Pepe Int'l Dev. Co., 915 S.W.2d at 931.

 Therefore, an entity that was not a party to the arbitration agreement may not
enforce the agreement's provisions unless that non-signatory entity falls into an
exception, recognized under general equitable or contract law, that would allow such
enforcement. See Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 526-28
(5th Cir. 2000); cf. Lyn-Jay Int'l, 888 S.W.2d at 531, 532; Pepe Int'l Dev. Co., 915
S.W.2d at 930-31. One such exception is that, as with any contract, an assignee, such
as a successor-in-interest, can be bound to the terms of an arbitration agreement
signed by its assignor, such as a predecessor-in-interest, depending on the
assignment's terms. See Capitan Enters., Inc. v. Jackson, 903 S.W.2d 772, 775 (Tex.
App.--El Paso 1994, writ denied) (generally, party assuming contractual liability is
liable to same extent as party from which it assumed contract); cf. In re Koch Indus.,
49 S.W.3d at 447 (holding non-signatory defendant companies affiliated with
signatory defendant company could enforce arbitration agreement against signatory
plaintiff when same operative facts were involved).

 It is undisputed that none of the Auto Nation parties is a signatory to the
arbitration agreement or falls under the agreement's definition of parties. Instead, the
Auto Nation parties' unverified motion to compel alleged that one of the Auto Nation
parties purchased, and thus was corporate successor-in-interest to, Mohamed's former
employer, Park Place-South, which actually signed the agreement. Similarly, at oral
argument in this Court, the Auto Nation parties asserted that they had assumed all of
Park Place-South's contractual obligations as part of the purchase. However, and
despite Mohamed's disputing their right to enforce the agreement at the hearing
below, the Auto Nation parties never met their burden of presenting evidence
supporting their corporate-successor assertion or revealing the terms of any
contractual assignments pursuant to that purchase. (12) See Pepe Int'l Dev. Co., 915
S.W.2d at 931 (non-signatory's burden); In re Koch Indus., 49 S.W.3d at 444
(evidence required). 

 The Auto Nation parties respond that they may nonetheless enforce the
arbitration agreement because they fall under two further exceptions--both based on
equitable estoppel--to the rule that a non-signatory cannot enforce an arbitration
agreement. We disagree with each of the Auto Nation parties' contentions.

 First, the Auto Nation parties invoke the equitable exception that a non-signatory defendant may enforce an arbitration clause contained in a contract that
contains other terms on which the signatory plaintiff must rely to prosecute its claims. 
See, e.g., McMillan v. Computer Translation Sys. & Support, 66 S.W.3d 477, 482
(Tex. App.--Dallas 2001, no writ) (combined appeal & orig. proceeding). The
reason for this rule is that a plaintiff cannot seek to hold a non-signatory liable for
duties imposed under a contract, which contains an arbitration clause, while
simultaneously avoiding the arbitration clause on the ground that the defendant is a
non-signatory. See Grigson, 210 F.3d at 528. Mohamed, however, does not have to
rely on the terms of his own unwritten employment contract, or even on those of the
written arbitration agreement, to assert claims for race discrimination, intentional
infliction of emotional distress, or negligent hiring, supervision, and retention. 
Therefore, this equitable exception does not apply. Contrary to the Auto Nation
parties' claim, the logic of this exception simply does not extend to employment-related claims that do not rely on the employment contract's terms. 

 Second, the Auto Nation parties rely on the equitable exception that, when a
plaintiff that is a signatory to an arbitration agreement sues both signatory and non-signatory defendants based on substantially interdependent and concerted misconduct
by all defendants, the non-signatory defendants may enforce the arbitration agreement
against the plaintiff. See McMillan, 66 S.W.3d at 482. The Auto Nation parties base
their argument on the fact that (1) Mohamed also sued Sullivan and Havard, (2) these
men were employees of Park Place-South, a signatory to the arbitration agreement
through the agreement's definition of "Employer," and (3) the arbitration agreement
defined "Employer" to include employees of Park Place-South, such as Sullivan and
Havard. The Auto Nation parties argue that because Mohamed sued both signatories
(Sullivan and Havard) and non-signatories (the Auto Nation parties) for interrelated
misconduct, the Auto Nation parties may enforce the arbitration agreement against
Mohamed.

 The Auto Nation parties' argument overlooks that Sullivan and Havard had
neither been served nor had appeared in the suit before the trial judge's ruling. (13) 
Generally speaking, a trial court has no personal jurisdiction over defendants that
have not yet been served, appeared, or otherwise waived service, and they are thus not
yet parties to the suit. See Tex. R. Civ. P.124 (generally, no judgment against
defendant unless defendant is served, appears, or waives service); Dodd v. Twin City
Fire Ins. Co., 545 S.W.2d 766, 770 (Tex. 1977); Dyer v. Wall, 645 S.W.2d 317, 318-19 (Tex. App.--Corpus Christi 1982, no writ); cf. Wilson v. Dunn, 800 S.W.2d 833,
836-37 (Tex. 1990).

 Relying on Texas and federal law, the Auto Nation parties respond that a
plaintiff cannot dismiss a signatory defendant simply to prevent a non-signatory
defendant from enforcing an arbitration agreement under this particular equitable
estoppel theory. See Grigson, 210 F.3d at 528; McMillan, 66 S.W.3d at 482. 
Grigson is distinguishable because the dismissal of the signatory defendants in that
case was part of a scheme, clearly designed to bypass an arbitration agreement's
effect, that joined them and the formerly adverse plaintiff as joint plaintiffs in a new
suit against the non-signatory defendants. See id. at 526, 528, 530. Equity would not
allow such scheming to avoid arbitration. See id. at 528. Moreover, the non-signatory defendants had obviously answered. See id., passim. The record here, in
contrast, shows only that Sullivan and Havard had not yet answered or been served,
not that they were served, only to be dismissed later pursuant to a scheme akin to that
in Grigson. McMillan, on which the Auto Nation parties also rely, is distinguishable
for similar reasons. See id., 66 S.W.3d at 479, 481, 483 (holding non-signatory
defendants, who were sued separately from signatory defendants on same claims,
could enforce arbitration agreement under this equitable exception; further, non-signatory defendants were undisputedly agents or servants of signatory defendants). (14)


 We hold the Auto Nation parties did not carry their initial burden of showing
an arbitration agreement that they could enforce. Accordingly, we hold the trial court
abused its discretion in granting their motion to compel arbitration. We sustain this
portion of issue one.

 Because of our resolution of this portion of issue one, we need not reach
Mohamed's remaining issues, which concerned (1) whether adequate consideration
supported the arbitration agreement, (2) whether Mohamed carried his burden of
showing the arbitration agreement was unconscionable or that the Civil Practice and
Remedies Code barred the agreement's enforcement, and (3) whether the trial court
erred in not holding an evidentiary hearing. (15)

 Conclusion


 We conditionally grant the petition for writ of mandamus, which will issue only
if the trial court does not vacate its March 18, 2002 order granting the Auto Nation
parties' motion to compel arbitration and abating the lawsuit pending arbitration.


 We deny the Auto Nation parties' motion for sanctions in the mandamus
proceeding.





 Tim Taft


 Justice


Panel consists of Justices Taft, Alcala, and Price. (16)


Publish. Tex. R. App. P. 47.4.
1. Appellant/relator Kebret I. Mohamed also sued Michael Sullivan and Ken
Havard. However, Mohamed claims, without dispute, that neither Sullivan nor
Havard had been served or had answered as of the date of the challenged order,
and the appellate record, which shows that "[s]ervice is currently in progress"
for these individuals and does not contain any filings by them, does not
contradict Mohamed's claim. See Tex. R. App. P. 38.1(f). Accordingly, we do
not consider either Sullivan or Havard to be parties to the interlocutory appeal
or the mandamus proceeding.
2. The arbitration agreement was between Mohamed and "Employer," which was
defined as (1) Park Place Motorcars, Park Place Lexus, Park Place Bodywerks,
Park Place Porsche/Audi, or any Park Place Company and (2) any of those
companies' parent company, subsidiary company, affiliate company, directors,
officers, employees, or agents. It is undisputed that Mohamed's employer at
the time of the arbitration agreement, Park Place-South, fell under the
definition of "Employer."
3. Mohamed does not dispute that, if the arbitration agreement is valid and
enforceable by the Auto Nation parties, his claims are the type that fall within
the agreement's scope.
4. Our cause no. 01-02-00347-CV.
5. See Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (Vernon Supp.
2002).
6. See 9 U.S.C. §§ 1-16 (2001).
7. We note that dictum in the Texas Supreme Court's opinion in Jack B. Anglin
Co. v. Tipps implies that appellate jurisdiction might lie over an order granting
a motion to compel arbitration under the TAA. See id., 842 S.W.2d 266, 271-72 (Tex. 1992) (stating in dictum that the FAA and TAA "permit . . . appeal
from an interlocutory order granting or denying a request to compel
arbitration"). Anglin's quoted statement is dictum: the order under review
denied arbitration, and the Court held the FAA applied and mandamus lay. See
id. at 270, 272. We agree with our sister courts of appeals, for this reason and
for the additional reasons they discuss, that the dictum in Anglin does not
control and thus that no interlocutory appeal lies from an order granting a
motion to compel arbitration under the TAA. See Glazer's Wholesale
Distribs., Inc. v. Heineken USA, Inc., No. 05-99-01685-CV, slip op. at 8 (Tex.
App.--Dallas June 29, 2001, pet. granted) (consolidated orig. proceeding &
interlocutory appeal; designated for publication) (declining to follow the
Anglin dictum); Lipshy Motorcars, Inc. v. Sovereign Assocs., Inc., 944 S.W.2d
68, 69-70 (Tex. App.--Dallas 1997, no writ) (same); Elm Creek Villas
Homeowner Ass'n, Inc. v. Beldon Roofing & Remodeling Co., 940 S.W.2d 150,
153-54 (Tex. App.--San Antonio 1996, no writ) (same); Gathe v. Cigna
Healthplan of Texas, Inc., 879 S.W.2d 360, 362 (Tex.App.--Houston [14th
Dist.] 1994, writ denied) (same); see also Trico Marine Servs., Inc. v. Stewart
& Stevenson Technical Servs., 73 S.W.3d 545, 548 (Tex. App.--Houston [1st
Dist.] 2002, no writ) (combined appeal & orig. proceeding) (though not
reaching the issue, noting the dictum in Anglin and listing courts that have
declined to follow that dictum).
8. 842 S.W.2d at 271-72.
9. Our cause no. 01-02-00519-CV.
10. The parties' briefs also label this challenge as a "standing" issue. However, as
discussed below, the issue is evidentiary, not one of standing.
11. The Auto Nation parties claim that Mohamed did not preserve this challenge
because it was not raised in writing below. However, Mohamed raised the
challenge at the hearing on the motion to compel and thus preserved it. See
Tex. R. App. P. 33.1(a).
12. We also note that the arbitration agreement defined "Employer," one of the
signatory parties, as a "parent company, subsidiary company, [or] affiliate
company" of any of the companies listed in the definition of "Employer." The
Auto Nation parties did not present evidence that they fit into one of these
categories, either.
13. As stated before, Mohamed asserts this fact in his brief without dispute, and
the record does not contradict Mohamed's claim. See Tex. R. App. P. 38.1(f).
14. We distinguish the remaining federal cases on which the Auto Nation parties
rely because their records showed an agency, alter-ego, or sister-corporation
relationship, between the signatory and non-signatory defendants, that allowed
the non-signatories to enforce the arbitration clause under general contract
principles. See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d
1110, 1121-22 (3rd Cir. 1993); Arnold v. Arnold Corp.-Printed
Communications for Bus., 920 F.2d 1269, 1281-82 (6th Cir. 1990); Letizia v.
Prudential Bache Sec., Inc., 802 F.2d 1185, 1187-88 (9th Cir. 1986). Here, the
Auto Nation parties' summary evidence did not show these relationships. 
Moreover, in each of these federal cases, the non-signatories were obviously
parties that had been served or had answered because they were actively
participating in the lawsuits. See id., passim.
15. We note that the Auto Nation parties did not claim below and do not claim here
that they were entitled to an evidentiary hearing to show they could enforce the
arbitration agreement despite being non-signatories. In any event, showing
their right to enforce the agreement was their initial burden, to be carried by
presenting summary evidence. See In re Oakwood Mobile Homes, Inc., 987
S.W.2d 571, 573 (Tex. 1999); Anglin, 842 S.W.2d at 269.
16. The Honorable Frank C. Price, former Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.